IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-03521-RBJ

STASIA VINNEDGE,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

---

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and MOTIONS IN LIMINE

---

    This case involves an insurance coverage dispute that arose from a car accident in which Stasia Vinnedge ("plaintiff") suffered numerous injuries. ECF No. 37 at 4, ¶9. Owners Insurance Company ("defendant" or "Owners") insured Ms. Vinnedge at the time of the accident. Ms. Vinnedge sues defendant for breach of an insurance contract and statutory unreasonable delay. Defendant filed a motion for summary judgment on all claims. ECF No. 37. For the following reasons, that motion is GRANTED in part and DENIED in part. The Court also addresses the pending motions in limine in this order.

## I. FACTUAL BACKGROUND

    On December 20, 2013 Ms. Vinnedge was in a car accident and sustained serious injuries. ECF No. 37 at 4, ¶8. Defendant issued the insurance policy that was in effect on the date of the accident. *Id*. at 3, ¶1.

1

Ms. Vinnedge's policy with Owners had an underinsured motorist ("UIM") provision that agreed to cover $500,000 in the event that an at-fault driver's insurance was insufficient to cover the insured's medical costs. ECF No. 37-1 at 2. The policy stated, "[w]ith regard to an underinsured automobile, there is no coverage under this endorsement until the limits of liability of all bodily injury liability bonds and insurance policies applying to the underinsured automobile and its operator have been exhausted by payment of judgments or settlements." *Id*. at 5. Anna White, the at-fault driver, also had an insurance policy with insurance limits of $100,000. *Id*. at ¶9. Ms. Vinnedge, with defendant's permission, accepted a $100,000 settlement from Ms. White's insurance company in November 2017. ECF No. 37 at 4, ¶12.

On August 25, 2014 Owners contacted Ms. Vinnedge to inform her that it had not heard whether she was still receiving treatment for injuries from the car accident. The letter also stated that "[i]f you are still treating, please contact us and advise us the extent of your injuries and how long you anticipate treating for. Please also send in any other outstanding bills you have so that we can use your medical payments coverage to its exhaustion." ECF No. 37-2. Three years passed.

On September 7, 2017 plaintiff provided defendant with medical bills totaling $48,467.00. *Id*. at ¶11. On October 23, 2017 defendant entered the following into Ms. Vinnedge's claim file: "recd email from defense and Deana Danger said that plaintiff's counsel doesn't think the case is worth more than the $100,000 defendant's [sic] policy limits." ECF No. 37-3 at 2. In November 2017, with Owners' consent, plaintiff accepted $100,000 from Ms. White's insurer.

On January 25, 2018 an Owners representative contacted plaintiff to determine whether she intended to file a UIM claim. She responded that she did intend to file a UIM claim. *Id*. However, she did not contact defendant again for nearly two more years. During those two years defendant continued to communicate with plaintiff to determine the status of her UIM claim. ECF No. 37-3 at 2. On January 26, 2018 Owners sent a letter to plaintiff's counsel that read

> Pursuant to the conditions set forth in the policy, we are requesting that you provide us with information regarding all liability insurance that may be available to any person/entity that you are claiming is legally liable for the motor vehicle accident on December 20, 2013. Please also provide any information regarding any other policies that may provide underinsured motorist coverage to your client . . . .
>
> We also request that you provide us with complete medical records and billings for any treatment that is being claimed as a result of this accident. Please also provide the name and contract [sic] information of your clients [sic] primary physician. Please advise on any lost wages, current status, future medical treatment and any impairment your client is claiming.

ECF No. 37-4 at 1. Ms. Vinnedge did not respond to this letter personally, nor did her attorney respond. ECF No. 46-1 at 126:12-14. On March 21, 2018 defendant again sent a letter to plaintiff's counsel. That letter read

> I am contacting you to find out the status of your client's potential UIM claim. We have not heard from you in some time. I did send a status update letter on 1/26/18. If we do not hear from you by April 30, 2018, we will assume the claim is not being pursued and we will close the file.

*Id*. at 2. Neither plaintiff nor her attorney ever responded to this letter, and Owners accordingly closed the file. ECF No. 37 at 4, ¶14.

On October 31, 2019—two years after defendant approved the settlement with the at-fault driver and more than seventeen months after defendant sent the two aforementioned letters—plaintiff sent defendant a letter to notify it that she was still receiving treatment for injuries and intended to file a UIM claim. ECF No. 37-6 at 2–3. The letter listed twenty-three

3

medical records as enclosures and also included Ms. Vinnedge's responses to interrogatories and expert disclosures from the underlying suit against the at-fault driver. *See* ECF No. 37-6. Plaintiff's counsel further wrote

> As of September 20, 2017, Ms. Vinnedge's past medical bills total $195,142.72 and her future medical bills will be in excess of $500,000. The estimate for future medical bills is based on Ms. Vinnedge's need for Botox injections four times per year for the rest of her life at approximately $4,877.10 per treatment ($19,500 per year) and the need for radiofrequency ablations (rhizotomies) approximately every 18 months at approximately $13,000 per treatment ($169,052 for 13 rhizotomies over the next twenty years). Ms. Vinnedge is 50 years old. I am very conservatively estimating treatment for the next 20 years for the sake of this claim at this time. I believe this is everything you will need to evaluate the UIM claim.

ECF No. 37-6 at 3. While the letter said these records were enclosed, they were not actually attached to the email and apparently were sent separately via regular mail. Defendant did not receive the listed enclosures at or near the time it received the letter. It only received them during discovery. ECF Nos. 37 at 5, ¶17; 46 at 5, ¶17.

As a result of plaintiff's delay, the statute of limitations was set to expire immediately after she filed her UIM claim with defendant. Plaintiff requested that defendant toll the statute of limitations so that it would have sufficient time to review her medical records and make a benefits determination prior to its expiration. Defendant refused to toll the statute of limitations.

## II. PROCEDURAL BACKGROUND

Plaintiff filed suit in state court on November 14, 2019, six years after the accident, two years after the settlement with the at-fault driver's insurance company, and two weeks after submitting her claim for UIM benefits to Owners. Defendant removed the action to federal court on December 12, 2019. ECF No. 1. On December 20, 2019 plaintiff filed an amended complaint and jury demand. ECF No. 11. Defendant filed its answer to the amended complaint

on January 23, 2020.  ECF No. 15.  Defendant moved for summary judgment on February 4, 2021.  ECF No. 37.  Plaintiff filed her response on March 22, 2021, and defendant filed its reply on April 5, 2021.  ECF Nos. 46, 47.  The motion is ripe for review.

### III. STANDARD OF REVIEW

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment.  *See Concrete Works of Colorado, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### IV. ANALYSIS

This case is in a peculiar place procedurally because of plaintiff's two-year delay in filing her UIM claim with defendant.  The insurance policy at issue states, "[a]ny person seeking Uninsured Motorist Coverage must present a claim for compensatory damages according to the terms and conditions of the policy and conform with any applicable statute of limitations applying to bodily injury claims in the state in which the accident occurred."  ECF No. 37-1 at 6.

The parties agree that the relevant statute of limitations is two years from the date of the settlement with the at-fault driver, which was November 2017. Plaintiff notified defendant that she intended to file a UIM claim on October 26, 2019. Defendant did not agree to toll the limitations period, and plaintiff filed suit—alleging breach of contract and statutory unreasonable delay—two weeks after filing her claim for benefits.[1] Accordingly, nearly all of defendant's conduct that supposedly gives rise to the two claims occurred *after* plaintiff filed this lawsuit. In her response plaintiff contended that she would file a separate motion to amend her complaint to include the relevant conduct. She never filed that motion with this Court. As a result, plaintiff's claim alleging unreasonable delay was filed before any delay occurred. Notwithstanding this peculiarity, I consider the parties' arguments.

    1. Unreasonable Delay and Bad Faith

Plaintiff claims that defendant breached its duty of good faith and fair dealing when it unreasonably delayed or denied her claim for UIM coverage. Ms. Vinnedge alleges that Owners deprived her of the policy benefits she was owed, failed to communicate with her about information it needed to evaluate her claim, and unreasonably delayed its evaluation of her claim in violation of Colorado law. Defendant contends that no reasonable jury could find in favor of plaintiff on her unreasonable delay and bad faith allegations. I agree with defendant.

---

[1] Although plaintiff only pled two causes of action in her amended complaint—breach of contract and statutory unreasonable delay—both parties reference a bad faith claim. Statutory unreasonable delay claims are often intimately connected with bad faith breach of contract claims. In the allegations under her unreasonable delay claim for relief, plaintiff contends that Owners breached its duty of good faith and fair dealing when it unreasonably delayed its evaluation of her claim. ECF No. 11 at 4. The Court thus addresses unreasonable delay and bad faith as one claim.

"An insurer must deal in good faith with its insured." *Am. Fam. Mut. Ins. v. Allen*, 102 P.3d 333, 342 (Colo. 2004). "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). This tort may arise in a first-or third-party context. *See Allen*, 102 P.3d at 342. The first-party context, as is the case here, involves a claim against the insurer for its alleged misconduct with its own insured.

"When an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) (citing *Goodson*, 89 P.3d at 415); *see also Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985). In addition to recognizing this bad faith claim in tort, Colorado provides a statutory claim for unreasonable delay or denial of payment of insurance benefits. A first-party claimant like Ms. Vinnedge may bring an action for fees, costs, and double damages if her "claim for payment of benefits has been unreasonably delayed or denied." C.R.S. § 10-3-1116(1). "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Id.* § 10-3-1115(2). Whether an insurer's conduct was reasonable is "determined objectively, based on proof of industry standards." *Goodson*, 89 P.3d at 415. "The aid of expert witnesses is often required in order to establish objective evidence of industry standards." *Id.*

7

Thus, to survive summary judgment on this claim plaintiff must present evidence that Owners (1) unreasonably delayed or denied her benefits, and (2) had no reasonable basis for its actions. Plaintiff contends that defendant's refusal to toll the statute of limitations was unreasonable under the circumstances, and that it had no reasonable basis for such a refusal. Plaintiff is therefore seeking to introduce defendant's litigation conduct as evidence of unreasonableness. Numerous courts have considered whether litigation conduct is proper evidence of unreasonableness. For example, in *Timberlake Constr. Co. v. U.S. Fidelity and Guar. Co.*, the Tenth Circuit, interpreting Oklahoma law, stated

> In general, an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage . . . . [O]nce litigation has commenced, the actions taken in its defense are not . . . probative of whether [an insurer] in bad faith denied the contractual lawsuit.

71 F.3d 335, 340 (10th Cir. 1995) (quoting *Palmer v. Famers Ins. Exchange*, 861 P.2d 895, 915 (Mont. 1993)). The *Timberlake Const. Co.* court also took into account policy considerations when addressing the issue. It held,

> Allowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims. . . . [P]ermitting allegations of litigation misconduct would have a chilling effect on insurers, which would unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law.

*Id.* at 341 (citing *Int'l Surplus Lines Ins. Co. v. Univ. of Wyoming Rsch. Corp.,* 850 F.Supp. 1509, 1529 (D. Wyo. 1994)).

The Colorado Court of Appeals clarified the appropriate test courts should use when determining whether litigation conduct is admissible as evidence of unreasonableness. There, the court agreed with the *Timberlake* court that "there are substantial concerns about the relevancy, probative value, and prejudicial impact of evidence of attorney litigation conduct

when presented as evidence of a bad faith claim." *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 818 (Colo. App. 2006). Despite these concerns, the court noted that there are limited circumstances in which a court may consider such evidence. The court held that evidence of "litigation conduct may be admitted if the risks of unfair prejudice, confusing of the issues, or misleading the jury, and consideration of undue delay, waste of time, or the presentation of unnecessary cumulative evidence are substantially outweighed by the probative value of the evidence." *Id*.

Evidence of Owners' refusing to toll the limitations period is not probative of unreasonableness. It is instead probative of Owners' effort to vigorously defend a lawsuit against it. The policy explicitly contemplated the statute of limitations and stated that "[n]o legal action may be brought against us until there has been full compliance with all the terms of this policy." ECF No. 37-1 at 7. Thus, plaintiff was on notice of the pending statute of limitations, and that she needed to comply with the policy prior to her filing suit against defendant. Despite this, plaintiff continued to ignore defendant's letters asking if she intended to file a UIM claim and only decided to file a UIM claim when the statute of limitations was set to expire. The Court will not punish Owners for plaintiff's delay in filing her claim. The Court therefore finds that any evidence regarding defendant's refusal to toll the statute of limitations is inadmissible because it does not survive the test outlined in *Parsons*. *Id*.

Even if such evidence were admissible, the Court concludes that no reasonable jury could find for plaintiff on her unreasonable delay claim. She did not give defendant sufficient time to evaluate her claim when she filed suit two weeks after filing her UIM claim. Unreasonable delay typically involves an insurance company sitting on a claim for months or even years. Owners

could not have unreasonably delayed consideration of her claim when plaintiff gave it only two weeks to evaluate it. Owners would barely have had time to collect all the relevant documents before plaintiff sued, much less evaluate and adjudicate her claim. Defendant's motion for summary judgment as to the statutory unreasonable delay claim is therefore GRANTED. The Court also finds that no reasonable jury could find that Owners knowingly or recklessly disregarded the validity of Ms. Vinnedge's claim in the two-week period between her notifying it of her UIM claim and filing suit. Thus, defendant's motion is GRANTED as to plaintiff's bad faith allegations.

## B. Breach of Contract Claim

Plaintiff next alleges that defendant breached its insurance contract when it denied benefits allegedly owed to her under the contract. Defendant contends that the policy was invalidated when plaintiff failed to comply with a condition precedent to coverage, i.e., timely sending her medical records to defendant so that it could evaluate her claim. Upon reviewing the briefs and the record, the motion is denied as to plaintiff's breach of contract claim because there are genuine disputes of material fact.

An insurance policy is a contract governed by basic contract principles. The elements for a breach of an insurance contract claim in Colorado are (1) existence of a contract; (2) performance by plaintiff or some justification for nonperformance; (3) failure to perform by defendant; and (4) damages to plaintiff. *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 918 (10th Cir. 2015) (unpublished) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)); *see also Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F. Supp. 2d 1200, 1212 (D. Colo.

1998).  Neither party disputes that a valid contract exists.  There are genuine disputes as to other elements, however.

For instance, as to element two, the parties dispute whether plaintiff performed her obligations under the contract.  Defendant asserts a failure-to-cooperate defense and argues that plaintiff's failure to satisfy the policy's condition precedent—timely sending her medical records to defendant—invalidated her coverage under the policy.  Plaintiff meanwhile contends that she timely sent the medical records, and that defendant did not receive them.  She points to the October 26, 2019 email that was sent to defendant notifying it of her UIM claim.  ECF No. 37-6 at 3.  The letter lists twenty-three medical records as enclosures and says that they will be sent to defendant separately.  *Id*.  Accordingly, defendant knew that Ms. Vinnedge was attempting to adhere to her obligations under the contract.  Although defendant admits that it routinely notifies its insured if it does not have sufficient information to evaluate a claim, defendant never notified Ms. Vinnedge that it did not receive the records.  Nor did defendant follow up with her to request the necessary documents to evaluate her claim.  Thus, whether Ms. Vinnedge complied with the condition precedent is a disputed question of fact that must be determined by a jury.

Also at issue is whether defendant failed to perform its obligations—defendant claims its performance was excused, while plaintiff argues it breached by not covering her medical expenses.  Since this question turns on the dispute regarding plaintiff's condition precedent, there is also a genuine dispute of material fact under element three, further making summary judgment inappropriate.

Defendant's motion as to the breach of contract claim is accordingly DENIED.

## ORDER

1. Defendant's motion for summary judgment (ECF No. 37) is GRANTED in part and DENIED in part. Defendant's motion is granted on the unreasonable delay claim and denied on the breach of contract claim.

2. In accordance with this order, defendant's motion in limine regarding litigation conduct as evidence of bad faith (ECF No. 49) is GRANTED, and defendant's motion in limine re the measure of 1116 damages (ECF No. 51) is DENIED AS MOOT.

3. Defendant's motion in limine regarding plaintiff's experts (ECF No. 48) is GRANTED IN PART AND DENIED IN PART. It is granted as to expert Levin, whose testimony is no longer relevant. It is denied as to expert Petersohn, but defendant is granted permission to submit a rebuttal report to Petersohn's report no later than June 18, 2021 if it wishes to do so.

3. Defendant's motion in limine regarding the testimony of treating physicians (ECF No. 50) is GRANTED IN PART. If the opinion is not clearly and specifically stated in the medical records, then the opinion must be disclosed in accordance with Rule 26(a)(2)(C). I agree that the brief summaries of expected testimony provided by plaintiff are not sufficient to comply with the rule. The Court grants plaintiff until June 18, 2021 to submit compliant disclosures for these treating experts if she can do so. Otherwise, their testimony will be strictly limited to what is clearly and specifically stated in the medical records.

DATED this 4th day of June, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

13